Karl G. GRANSE, a Minnesota citizen, in propria persona, proceeding in summo jure, Plaintiff,

v.

UNITED STATES of America, the Internal Revenue Service, Internal Revenue Service District Director Inar Morics, Acting District Director Darlene O. Duffy, Acting Group Manager M. Ket, Examiner LaWayne Stone, and Revenue Officers Gabriel McKinney and Brad Meacham, Defendants.

Civ. No. 3–95–20.

United States District Court,
D. Minnesota,
Third Division.

March 21, 1995.

**220**

Karl G. Granse, Apple Valley, MN, pro se.

John A. Marrella, Trial Atty., Tax Div. U.S. Dept. of Justice, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

Before the Court is Plaintiff Karl G. Granse's Complaint to Enjoin Collection or Seizure. The Internal Revenue Service ("IRS") has made a jeopardy assessment[1] against Plaintiff pursuant to 26 U.S.C. § 6861(a)[2] in the amount of $86,621.00, and levied upon certain property owned by the plaintiff. Both parties have submitted documents for the Court's review and oral argument was presented to the undersigned on February 24, 1995. The following constitute the Court's Findings of Fact and Conclusions of Law.

### Findings of Fact

1. Plaintiff has not filed any income tax returns for any of the years 1988 through 1993. Decl. of LaWayne Stone, ¶ 2; Pl.'s Exh. C–8A to –8F (notices of tax due on federal returns for 1988 through 1993); Defs.' Exh. K.

2. On November 1, 1994, Plaintiff opened a personal checking account, Account Number 458794, at the Citizens Independent Bank in Saint Louis Park, Minnesota ("the Bank"). Defs.' Exh. D. Plaintiff opened the account with an initial $1,000 cash deposit. *Id.*

3. On November 7, 1994, Plaintiff opened a business checking account, Account Number 161935, at the Bank in the name of "Citizen Karl G. Granse, d/b/a/ Citizens for a Constitutional Minnesota, 7611 Whitney Drive, Apple Valley, Minnesota, 55124," a sole proprietorship. Plaintiff opened the account with an initial $1,000 cash deposit. Defs.' Exhs. B & C. On the application for the business account, Granse stated that the Federal Identification Number for "Citizens for a Constitutional Minnesota" is 00–0000000; on the same form, Granse indicated that this Social Security Number is 000–00–0000. Defs.' Exh. C. These numbers are invalid. Decl. of Gabriel McKinney, ¶ 9(b).

---

1. "A jeopardy assessment is made for a tax year that has ended and for which the due date for filing has passed. A termination assessment is made for a tax year that has not ended and for which the due date for filing has not yet passed." *Nolan v. United States*, 539 F.Supp. 788, 789 (D.Ariz.1982) (citations omitted).

2. Section 6861(a) provides:

If the Secretary believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency (together with all interest, additional amounts and additions to the tax provided for by law), and notice and demand shall be made by the Secretary for the payment thereof.
26 U.S.C. § 6861(a).

4. On November 7, 1994, Laura Tillotson, Personal Banking Officer for the Bank, filed a Currency Transaction Report ("CTR") for a currency transaction involving 183 negotiable instruments totalling $44,456.00. Pl.'s Exh. C–2. Tillotson identified the individual who conducted the transaction as Karl G. Granse, Social Security Number 000–00–0000; Tillotson identified the account involved as checking account 45–8794. Tillotson failed to identify the type of transaction. *Id.*

5. On November 9, 1994, Tillotson filed a CTR for a currency transaction involving twenty negotiable instruments totalling 14,-445.00, made at the Bank. *Id.* Again the individual conducting the transaction was Granse and the account involved was checking account number 45–8794. Tillotson again did not identify the type of transaction. *Id.*

6. Also on November 9, 1994, Tillotson filed a CTR for a currency transaction involving 405 negotiable instruments totalling $95,-917.00, made at the Bank. *Id.* The individual conducting the transaction was Granse; the account involved was checking account number 16–1935. Tillotson did not indicate the nature of the transaction. *Id.*

7. Revenue Officer Stone calculated the amount of Plaintiff's tax liability for the years 1988 through 1993 using a Substitute for Return method, as authorized by 26 U.S.C. § 6020(b).[3] Stone Decl. at ¶ 5. Specifically, Officer Stone used the following information:

a. Deposits at the Bank totalling approximately $150,000 (*see, supra,* ¶¶ 2–4) consisting of money orders dating from December 1992 through September of 1994; and

b. Figures supplied by the Bureau of Labor Statistics for expenditures of a single person.

*Id.* at ¶ 7; *see also* Defs.' Exhs. G, I & J.

8. The Recommendation for Jeopardy/Termination Assessment, IRS Form 2644, originated with Revenue Officer McKinney and was routed to the Acting Chief of Examination, the Chief of Collection, the Acting Chief of QAB, the Acting District Counsel, the Chief of CID and the District Director for approval. Defs.' Exh. G. All of these officials signed off on the Form 2644. *Id.* The Recommendation was properly reviewed, recommended and approved by the appropriate officials. Decl. of Bart Udeen, ¶ 3.

9. On November 23, 1994, the IRS imposed a jeopardy assessment against Plaintiff pursuant to 26 U.S.C. § 6861(a), in the amount of $86,621.00. Pl.'s Exh. C–6; Defs.' Exh. H. Revenue Officer McKinney attempted to serve notice of the assessment upon Plaintiff by means of personal delivery to his last known address: 7611 Whitney Drive, Apple Valley, Minnesota. McKinney Decl., ¶ 11. Plaintiff was not at this address; therefore, McKinney sent the notice of assessment to Plaintiff at the Apple Valley address by certified mail on November 23, 1994. *Id.*

10. Also on November 23, 1994, after Plaintiff had been served with the notice of assessment, a revenue officer served a Notice of Levy upon the Bank for $86,621.00. Pl.'s Exh. C–3B. Plaintiff received a copy of that Notice of Levy. *Id.* The checking accounts at the Bank represented Plaintiff's only identifiable asset as of November 23, 1994. McKinney Decl. at ¶ 10.

11. On November 23, 1994, a Notice of Levy for $86,621.00, signed by Revenue Officer Meacham, was filed in the United States District Court for the District of Minnesota. Pl.'s Exh. C–15.

12. As a revenue officer served the Notice of Levy upon the Bank, Plaintiff withdrew all funds from his checking accounts. The Bank certified checks drawn by the Plaintiff on each of his accounts in the amounts of $56,500 and $93,500, respectively.

---

**3.** Section 6020(b) of the Code provides:

(1) **Authority of Secretary to execute return**—If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such other information as he can obtain through testimony or otherwise.

(2) **Status of returns**—Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes. 26 U.S.C. § 6020(b).

Defs.' Exh. E. As a result of Plaintiff's withdrawals, the IRS was unable to collect any funds from Plaintiff's accounts at the Bank.

13. On November 23, 1994, Plaintiff purchased a residence in Burnsville, Minnesota, for $150,244.80, utilizing the funds he had withdrawn from the bank. Defs.' Exh. F.

14. Revenue Officer McKinney conducted a title search on December 1, 1994, at the Office of the County Recorder for Dakota County, Minnesota, in which the city of Burnsville is located. McKinney Decl. at ¶ 15. The search revealed that no deed or any other document reflecting Granse's ownership in the Burnsville property had been recorded. *Id.*

15. On December 19, 1994, Revenue Officer McKinney confirmed with the Dakota County Office of the County Recorder that no deed or other document reflecting ownership had been recorded in Granse's name for the Burnsville property. *Id.* at ¶ 17. As of February 1, 1995, the records on file at the county recorder's office reflect that the owners of the Burnsville property are Edward Dean and Ardelle V. Gottschalk. Dec. of David Snoeyenbos, ¶ 4.

16. On December 19, 1994, McKinney served an administrative levy for $91,221.04 upon Granse by certified mail. Pl.'s Exh. C–10; McKinney Decl.

17. Pursuant to the levy and 26 U.S.C. § 6331, Revenue Officer McKinney seized the Burnsville property. A Notice of Seizure, dated December 19, 1994, was sent to Plaintiff. Pl.'s Exh. C–12.

18. A Notice of Seizure, dated December 19, 1994, was filed with the Dakota County Office of the County Recorder. Decl. of David Snoeyenbos, ¶ 4; Defs.' Exh. M.

19. On January 4, 1995, Plaintiff commenced this action by filing a Complaint to

Enjoin Collection or Seizure. Plaintiff states in his prayer for relief that he is seeking

a preliminary and permanent injunction ordering Defendants and any agency or employee thereof to return all property heretofore seized pursuant to the purported assessments or levies, and to release all of the levies, and enjoining Defendants from collecting on or seeking to enforce the purported assessment against plaintiff, by lien, levy, sale or otherwise, until at such time that the IRS meets the jurisdictional prerequisite requirements of the Internal Revenue Code and the mandates of the 10th Article of Amendment, and further that the agency so states the class, type or kind of tax imposed by statute and regulation upon this Plaintiff. (Compl., at 12.)

## Conclusions of Law

### I. Jurisdiction

■ Plaintiff asserts that this Court has jurisdiction to grant the relief he seeks pursuant to various provisions of the Constitution, the Internal Revenue Code, the Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq.*, and 28 U.S.C. §§ 1331, 1340, 1361 and 1366. Among the provisions of the Internal Revenue Code ("the Code") cited by Plaintiff is 26 U.S.C. § 7429(b), which provides that an individual against whom a jeopardy assessment has been imposed may obtain a judicial review of that assessment. Congress has vested exclusive jurisdiction, with limited exceptions, over any civil action for a determination under section 7429(b) in the district courts of the United States. 26 U.S.C. § 7429(b)(2)(A). The Court concludes that it has jurisdiction over this dispute pursuant to section 7429(b) of the Code and 28 U.S.C. § 1346(e),[4] to the extent that the Complaint is directed against the Defendant United States of America.[5]

---

4. Section 1346(e) of Title 28 provides:
 The district courts shall have original jurisdiction of any civil action against the United States provided in . . . Section 7429 of the Internal Revenue Code of 1986.
 28 U.S.C. § 1346(e).

5. The Court does not, however, independently have jurisdiction over the individual defendants

named in the Complaint; section 7429(b)(1) waives sovereign immunity only as to the United States. The Government admits that if the Plaintiff's motion for an injunction were granted against the United States, the other named defendants—all employees of the Internal Revenue Service—would effectively also be enjoined.

*II. Plaintiff's Jeopardy Assessment Challenge*

 The issues before the Court are limited to the two matters described in section 7429(g) of the Code: The reasonableness of the decision to make the jeopardy assessment and the reasonableness of the amount of the assessment. The Government bears the burden of proof with respect to the former issue, 26 U.S.C. § 7429(g)(1); the taxpayer bears the burden of proof with respect to the latter issue, 26 U.S.C. § 7429(g)(2); *e.g., Central De Gas De Chihuahua, S.A., v. United States,* 790 F.Supp. 1302 (W.D.Tex. 1992). The Court's review under section 7429 is de novo; the Court is not limited to the information available to the IRS at the time the assessment was made, but can also consider any information which subsequently becomes available. *Kerness v. United States,* Civ. No. 5–81–22, 1981 WL 1813, at * 2 (D.Minn. June 26, 1981) (report and recommendation), *adopted by* 1981 WL 1959 (D.Minn. Jun 24, 1981); *Abercrombie v. United States,* 46 A.F.T.R.2d (P–H) ¶ 80–5274, at 80–5891, 1980 WL 1653 (D.S.C. Sept. 3, 1980). Given the summary nature of the proceedings, the Court cannot concern itself with a determination of the taxpayer's actual tax liability. *Friko Corp. v. Commissioner of Internal Revenue,* 26 F.3d 1139, 1141 (D.C.Cir.1994) (citing *Lindholm v. United States,* 808 F.Supp. 1, 2 (D.D.C.1992)); *Kerness,* 1981 WL 1813, at * 1.

 Plaintiff's overarching opposition to the propriety of the jeopardy assessment rests upon the argument that he owes no tax liability because the Internal Revenue Service has not adequately notified him as to what type or kind of taxes he must pay. Plaintiff further argues that the IRS has failed to identify the agency regulation which entitles the IRS to impose a tax upon him. Plaintiff argues that the statutes which comprise the Internal Revenue Code do not, in and of themselves, authorize the IRS to take any action; Granse argues that the IRS may only "implement" these statutes through the regulations contained in Title 26 of the Federal Regulations.

This argument challenges the existence of the tax liability underlying the jeopardy assessment. That issue is beyond the limited scope of the proceedings authorized by section 7429 of the Code, and the Court cannot address that argument here. Nothing determined in this proceeding, however, prejudices the plaintiff's ability to challenge whether he has a tax liability in a subsequent action for a refund. *Meadows v. United States,* 665 F.2d 1009, 1011–12 (11th Cir. 1982).

### A. The Reasonableness of the Assessment

 In determining whether the IRS's conclusion that collection of past due taxes was in jeopardy was reasonable, the term *reasonable* "means something more than 'not arbitrary or capricious' and something less than 'supported by substantial evidence.' " *Kerness,* 1981 WL 1813, at * 3 (quoting *Loretto v. United States,* 440 F.Supp. 1168, 1172 (E.D.Pa.1977)). As this Court has previously noted, the legislative history of the jeopardy assessment provision indicates that an assessment is reasonable if one of the following conditions exists:

(1) The taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself;

(2) The taxpayer is or appears to be designing quickly to place his property beyond the reach of the Government either by removing it from the United States, or by concealing it, or by transferring it to other persons, or by dissipating it; or

(3) The taxpayer's financial solvency appears to be imperiled.

*Id.* (quoting Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, H.R.Doc. No. 10612, 94th Cong., 2d Sess. 361 n. 1 & 536 n. 1 (1976); S.Rep. No. 94–938, p. 365 n. 6, U.S.Code Cong. and Admin.News 1976, pp. 2897, 3795 n. 6); *see also Fitzgerald v. United States,* 57 A.F.T.R.2d (P–H) ¶ 86–504, at 86–932 (M.D.Pa. Jan. 14, 1986).

 The Court concludes, from the factual findings made above, that the government has sustained its burden of proof on the reasonableness of the decision to impose a jeopardy assessment. The evidence indi-

cates that Granse refused to provide his Social Security Number when opening checking accounts at the Bank. Granse also removed a large amount of funds from the Bank on the day the Notice of Levy was served and purchased real property which has never been recorded as being in his name. *See Fitzgerald*, 57 A.F.T.R.2d at 86–932 (noting that presence of large amount of cash and history of not reporting taxable income contributes to reasonableness of inference that collection is in jeopardy). The Court concludes that Granse was designing to place his property beyond the reach of the Government by concealing it, transferring it or by dissipating it; hence, the determination that collection would be in jeopardy was reasonable.

### B. The Appropriateness of the Amount of the Assessment

■ Turning to the second issue, whether the amount assessed was appropriate under the circumstances, the Court notes at the outset that the amount of the assessment is presumed to be reasonable. *White v. United States*, 754 F.Supp. 66, 68 (M.D.N.C.1991); *Nadjmehchi v. United States*, 86–2 U.S.Tax Cas. (CCH) ¶ 9831, at 86,120 (C.D.Cal. Oct. 20, 1986) (citing cases); *Kerness*, 1981 WL 1813, at * 3. Recognizing that, "[o]f necessity, the government must resort to assumptions, presumptions and interpolation," courts have held that an arithmetically precise computation is not required. *Kerness*, 1981 WL 1813, at * 3 (citing cases). The taxpayer bears the burden of proving that the method used to compute the amount of the assessment is "fatally defective, irrational, arbitrary or unsupported." *Id.* Thus, the taxpayer must come forward with evidence "which establishe[s] an error in computation which was substantial to the extent that the Commissioner's assessment was rendered inappropriate." *Id.*

■ Plaintiff does not challenge the amount of the assessment *per se.* Rather, he argues that the method Revenue Officer Stone used to determine his tax liability—the Substitute for Return pursuant to 26 U.S.C. § 6020(b)—is unauthorized because the IRS has failed to identify the implementing regulation for section 6020(b). Plaintiff has brought forward no evidence to show that the amount of $86,621.00 is unreasonable; Plaintiff has provided no evidence, for example, that Officer Stone made any error in calculation when applying the Substitute for Return method.

■ The Court finds Plaintiff's "implementing" regulation argument without merit. Granse has fundamentally misconstrued those provisions of the Internal Revenue Code which relate to the powers and duties of the Secretary of the Treasury, 26 U.S.C. § 7801(a),[6] and the Commissioner of the Internal Revenue Service, 26 U.S.C. § 7802(a).[7] Pursuant to Section 7805(a) of the Code, the Commissioner has broad authority to "prescribe all *needful* rules and regulations for the enforcement of [the Code], including all rules and regulations as may be *necessary* by reason of any alteration of law in relation to internal revenue." 26 U.S.C. § 7805(a) (emphasis added); *see also Commissioner of Internal Revenue v. Engle*, 464 U.S. 206, 226–27, 104 S.Ct. 597, 604, 78 L.Ed.2d 420 (1984). Thus, section 7805(a) is a general grant of authority by Congress to the Commissioner to promulgate—as necessary—"interpretive regulations" stating the agency's views of what the existing Code provisions already require. *E.I. duPont de Nemours & Co. v. Commissioner of Internal Revenue*, 41 F.3d 130, 135 & n. 20 (3th Cir.1994). Section 7805(a) does *not* require the promulgation of regulations as a prerequisite to the enforcement of each and every provision of the

---

6. 26 U.S.C. § 7801(a) provides:

 **Powers and duties of the Secretary**—Except as otherwise expressly provided by law, the administration and enforcement of this title [Title 26, the Internal Revenue Code] shall be performed by or under the supervision of the Secretary of the Treasury.

7. 26 U.S.C. § 7802(a) provides:

**Commissioner of Internal Revenue**—There shall be in the Department of the Treasury a Commissioner of Internal Revenue, who shall be appointed by the President, by and with the advice and consent of the Senate. The Commissioner of Internal Revenue shall have such duties and powers as may be prescribed by the Secretary of the Treasury.

Code. The power of the Commissioner to promulgate regulations pursuant to section 7805(a)

> ... "is not the power to make law," but only the power "to carry into effect the will of Congress as expressed by the statute." *Manhattan General Equipment Co. v. Commissioner*, 297 U.S. 129, 134, 56 S.Ct. 397, 400 [80 L.Ed. 528] ... (1936). In cases where "the provisions of the [Code] are unambiguous, and its directions specific, there is no power to amend it by regulation." *Koshland v. Helvering*, 298 U.S. 441, 447, 56 S.Ct. 767, 770 [80 L.Ed. 1268] ... (1936).

*Lovett's Estate v. United States*, 621 F.2d 1130, 1135 (Ct.Cl.1980). Thus, if the Congressional mandate of the Code provision is sufficiently clear, an interpretative regulation is not necessary. *Russell v. United States*, 95–1 U.S.Tax Cas. (CCH) ¶ 50,029, at 87,122, 1994 WL 75063 (W.D.Mich. Nov. 23, 1994). Plaintiff has failed to show that section 6020(b) is so ambiguous or unclear as to require the promulgation of an interpretive regulation. Accordingly, the Court rejects his argument.

The Court concludes that Plaintiff has failed to meet his burden of proof on the issue of the reasonableness of the amount of the assessment. In light of this determination and the determination that the assessment was reasonable, the Court holds that plaintiff is not entitled to relief pursuant to section 7429 of the Internal Revenue Code.

### Conclusion

Based upon the foregoing, and all the records, files and proceedings herein, **IT IS ORDERED** that (1) Plaintiff's request for injunctive relief is **DENIED** and (2) Plaintiff's Complaint to Enjoin Collection or Seizure (Doc. No. 1) is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**