**OWENS–CORNING FIBERGLAS CORP.**

v.

**The UNITED STATES.**

**No. 224–69.**

United States Court of Claims.

July 14, 1972.

Stanley I. Rubenfeld, New York City, atty. of record for plaintiff; John J. A. Hossenlopp, and Shearman & Sterling, New York City, of counsel.

Joseph Kovner, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant; Philip R. Miller and Allan C. Lewis, Washington, D. C., of counsel.

Before COWEN, Chief Judge, DURFEE, Senior Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, and KUNZIG, Judges.

OPINION

NICHOLS, Judge.

Plaintiff, a corporate taxpayer, sues for interest on its overpayment of estimated tax which, at taxpayer's election, was credited against installments of estimated tax for the succeeding tax year. The facts are before the court on stipulation of the parties, reported by our commissioner pursuant to Rule 134(b).

■ Although there are several years at issue here, the fact pattern is the same for each year. Plaintiff pays its tax in quarterly installments based on its estimate of liability each April 15, June 15, September 15 and December 15. Any remaining balance plaintiff estimates as due is to be paid on March 15

of the succeeding year when taxpayer's return is filed.

As to each of the years here involved, plaintiff obtained two 3-month extensions of time to file its final return, one extension of right and the second at the discretion of the Commissioner of Internal Revenue. (Int.Rev.Code of 1954, §. 6081, 26 U.S.C. § 6081, hereafter IRC). The second extension expired September 15, the due date of the third estimated installment for the following year, and plaintiff in making the final return elected to have an overpayment shown by it applied to the said third estimated installment. The extension of time to file carries with it the condition that taxpayer file an estimate of tax due; any amount the new estimate is over taxpayer's previous estimated tax payments must be paid in two equal installments by March 15 and June 15. IRC § 6152.

Thus, in each year, upon extension of filing date, taxpayer, while paying current quarterly estimated taxes, is also making the final payments on the prior year's tax liability. Both parties suggest the following simplified example to illustrate the situation. After originally estimating a liability of $400, taxpayer makes quarterly payments on each of April 15, June 15, September 15 and December 15. On March 15 of the following year, taxpayer obtains a 3-month extension in which to file its return and estimates its ultimate tax to be $500, paying one half, $50, of the additional estimated tax. On the next June 15, it pays the last $50 and seeks and gains an additional 3 months. Finally, on September 15, taxpayer files its return for the previous year, showing a total tax liability of $475 and taxpayer's election to have the overpayment of $25 credited to the simultaneously due installment on its current taxes. This is substantially the situation involved here; and the question raised is whether taxpayer may demand interest on the $25 overpayment for the period from its payment, June 15, to the time of its disclosure as an overpayment upon filing of the final re-

turn, September 15. In one tax year, 1967, the overpayment, it turns out, occurred at the time of taxpayer's March 15 new estimate of tax due, but the governing principles are the same.

This scheme of estimated tax payments and extensions stems from the Current Tax Payment Act of 1943, 57 Stat. 126, which first authorized estimated installment payments. Section 6402(b), IRC, which had its genesis in that Act, reads:

(b) *Credits against estimated tax.* —The Secretary or his delegate is authorized to prescribe regulations providing for the crediting against the estimated income tax for any taxable year of the amount determined by the taxpayer or the Secretary (or his delegate) to be an overpayment of the income tax for a preceding taxable year.

This provision was re-enacted with no material change in the 1954 Act. Following the first enactment of the above-quoted section, regulations were issued to provide for such crediting of overpayments against estimated income tax payments for the succeeding year. T.D. 5333, 1944 Cum.Bull. 358, March 1, 1944 (now § 301.6402–3(b) ) provided as follows:

\* \* \* If the taxpayer elects to have the overpayment shown by his income tax return applied to his estimated tax for his succeeding taxable year, no interest shall be allowed on such overpayment, and the full amount of the overpayment shall be applied as a payment on account of the estimated tax for such year or the installments thereof.

Section 6513(d), enacted in 1954, adopts this treatment of the overpayment of taxes as a payment of current installments of taxes due:

(d) *Overpayment of income tax credited to estimated tax.*—If any overpayment of income tax is, in accordance with section 6402(b), claimed as a credit against estimated tax for the succeeding taxable year, such amount shall be considered as a pay-

ment of the income tax for the succeeding taxable year (whether or not claimed as a credit in the return of estimated tax for such succeeding taxable year), and no claim for credit or refund of such overpayment shall be allowed for the taxable year in which the overpayment arises.

Treasury Regulations § 301.6611–1(h) (2) (vii), issued in 1957, provides:

> (vii) *Estimated income tax for succeeding year.* If the taxpayer elects to have all or part of the overpayment shown by his return applied to his estimated tax for his succeeding taxable year, *no interest shall be allowed* on such portion of the overpayment credited and such amount shall be applied *as a payment* on account of the estimated tax for such year or the installments thereof. (Emphasis supplied.)

This Regulation plaintiff says is invalid. It is contrary to the general rule that interest is to be allowed, in cases of overpayments used as credits, from the date of overpayment to the due date of the installment against which such credit is applied, IRC § 6611(b) (1). Plaintiff says it is an attempt to repeal a statute by regulation. It is a restatement of the earlier rule of Reg. § 301.-6402–3(b), which provides for such overpayments, at taxpayer's election, to be applied as a "payment on account of the estimated income tax for [the succeeding] year." Plaintiff, in electing to apply the overpayment against its estimated tax liability for the succeeding year, we hold, had agreed to this treatment of the overpayment *as a payment.* We consider the Treasury's power to regulate the exercise of this privilege is broad enough that it may require a taxpayer who exercises it to forego benefits it would otherwise enjoy.

Furthermore, in addition to the foregoing, when plaintiff instructed the IRS to credit the taxes due the following year with the amount of the previous year's overpayment, such amount ceased to be an overpayment and became an advance payment on the ensuing year's taxes on which no interest is due to the taxpayer.

■ Taken together, Sections 6402(b), 6513(d), and 6611(b) (1) and Regulations Sections 301.6402–3(b), 301.6513–1(d), and 301.6611–1(h) (2) (vii) comprise a scheme permitting taxpayers to apply their overpayments to current tax liabilities. The Commissioner of Internal Revenue has promulgated the regulations which govern the circumstances, terms and conditions to which taxpayers must adhere if they make such an election. Generally, a taxpayer is entitled to interest on an overpayment because the Government has had the use of funds it otherwise did not have as of right. Here, however, there exist consecutive, overlapping tax years with continuous liabilities arising out of plaintiff's election of three-month extensions of filing dates and filing deadlines falling on the same day as installments are due on the current year's estimated tax. The accounts for the first year cannot be settled until plaintiff has filed its return well into the second year. The fact of, and amount of, overpayment becomes known at the same time that a new liability in plaintiff arises. Plaintiff has chosen to credit such overpayments to its liability for current installments due and such credit is not holding funds that are taxpayer's. Plaintiff argues that if a refund had been elected in this case interest would have been paid. Yet, on the same day plaintiff would be required to pay an installment on the current year's estimated income tax. Since 1966, Section 6611(e) denies interest on amounts refunded for a period of 45 days from the filing date. In such case, the Government would have both funds and plaintiff would lose interest for that period. By choosing to credit the overpayment to current tax liabilities, plaintiff retained funds it otherwise would not have had use of for 45 days. That this is a benefit to plaintiff may be inferred from plaintiff's consistency over six consecutive tax years in overestimating its tax liability and then electing to apply

its overpayment, upon determination, to the following year's obligation.

This court has said that a "contemporaneous regulation" must be upheld unless it is "unreasonable or flouts the Congressional will." Birchenough v. United States, 410 F.2d 1247, 1252, 187 Ct.Cl. 702, 710 (1969), citing Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948), where the Supreme Court stated that it had:

> * * * many times declared that Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons. [Citation omitted.]

In light of the entire statutory plan of estimated tax installments, together with the Internal Revenue Service's liberal policy of extension to file, the challenged regulation, § 301.6402–3(b) cannot be said to be unreasonable. Moreover, the regulation and its ancestors have existed since 1944. In Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 46, 83 L.Ed. 52 (1938), the Supreme Court said:

> Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law. [Footnote omitted.]

The court reaffirmed this principle by quoting it in United States v. Correll, 389 U.S. 299, 305–306, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967). Thus it cannot be said that the no-interest regulations have escaped Congressional attention over 27 years or that they are contrary to Congress' will. On the contrary, the Congress in proposing Section 6513(d) stated the then law in a manner that summarized together the enabling statute and the regulation. (H.Rep.No.

1337, 83d Cong., 2d Sess., p. A416, (3 U.S.Code Cong. & Adm.News (1954) pp. 4017, 4563–4); S.Rep. No. 1622, 83d Cong., 2d Sess., p. 587 (3 U.S.Code Cong. & Adm.News (1954) pp. 4621, 5236). Therefore, the regulation, with its explicit denial of interest in situations such as presented here, must be upheld.

In view of the foregoing, the petition must be and is dismissed.