**AVON PRODUCTS, INC.,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**No. 112, Docket 78–6078.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 30, 1978.

Decided Nov. 20, 1978.

---

Robert Feldgarden, Washington, D.C. (McClure & Trotter, Washington, D.C., of counsel), for plaintiff-appellant.

Frederick P. Schaffer, Asst. U. S. Atty., S. D. N. Y. (Robert B. Fiske, Jr., U. S. Atty., Peter C. Salerno, Asst. U. S. Atty., New York City, of counsel), for defendant-appellee.

Before KAUFMAN, Chief Judge, and TIMBERS and GURFEIN, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

The Internal Revenue Code permits a corporate taxpayer that has paid more than its liability in one year to claim a credit for the excess against its taxes for the succeeding year, I.R.C. § 6402(b). Avon Products, Inc. followed this procedure, but a subsequent audit showed that it had taken a larger credit than that to which it was entitled. This case requires us to determine the extent of Avon's liability for interest on the deficiency thus created.

### I.

On March 15, 1968, Avon filed Form 7004, thereby automatically extending to June 15 the deadline for filing its 1967 corporation income tax return. Avon estimated its total 1967 tax liability at $44,500,000, and remitted half the unpaid balance of $18,-600,000 on March 15, and the remainder on June 15. Avon completed payment of its 1967 taxes on June 15, as scheduled,[1] but it did not submit its return on that day. Instead, it requested and received a further three-month extension. When the return was finally filed on September 15, it showed a 1967 tax liability of $44,384,460.26, thus indicating that Avon had overpaid its taxes for that year by $115,626.32.[2] The taxpayer elected to credit that amount against the installment of its estimated 1968 income tax due the same day.[3]

But Avon could not yet close its books for 1967. On a subsequent audit, the IRS determined that its correct liability was $44,-483,062.43. Thus the Service conceded that Avon had originally overpaid its 1967 taxes by $17,024.15, but the excessive credit taken on September 15 had erased this surplus and created a deficiency of $98,602.17 instead. On February 1, 1971, Avon paid this sum plus interest from June 15, 1968. It did not challenge the deficiency assessment, nor did it contest the levy of interest from September 15. It asserted, however, that it was not liable for interest between June 15 and September 15, because the deficiency was not created until the excessive credit was claimed. It therefore sued to recover $1,479.03, the amount of interest assessed for that period. Both parties moved for summary judgment before Judge Motley. She granted the Government's motion, and Avon's appeal followed.

### II.

During the three-month period in dispute, Avon had unquestionably paid enough—indeed, $17,000 more than enough—to satisfy its 1967 tax liability. Moreover, it is a clearly established principle that interest is not a penalty but is intended only to compensate the Government for delay in payment of a tax. *E. g., Vick v. Phinney*, 414 F.2d 444, 448 (5th Cir. 1969); *Time, Inc. v. United States*, 226 F.Supp. 680, 686 (S.D.N.Y.), *aff'd on the basis of district court opinion*, 337 F.2d 859 (2d Cir. 1964). Avon should not be required to pay interest for this period on a later-created deficiency, unless the Internal Revenue Code compels such an extraordinary result. We do not believe it does.

---

1. Avon's total tax payment as of June 15 was augmented by a credit of $86.58 which it could claim for federal taxes on non-highway use of gasoline.

2. Avon's total payment on June 15 had been $44,500,086.58. *See supra* note 1.

3. In choosing to even accounts in this manner, rather than by waiting for the IRS to issue a refund check, Avon surrendered its claim to interest for overpaying taxes between June and September. Treas.Reg. § 301.6611–1(h)(2)(vii).

The IRS would have us charge Avon interest under I.R.C. § 6601(a).[4] That section provides: "If any amount of tax . . . is not paid on or before the last date prescribed for payment, interest on such amount . . . shall be paid for the period from such last date to the date paid." Manifestly, if we were to construe § 6601(a) literally, it would not even be apposite to this case. Avon's full tax was in fact paid "on or before the last date prescribed for. payment," June 15, and so the premise of the provision is undercut.

Reading § 6601(a) more broadly, it provides that interest shall begin running when a tax becomes both due and unpaid. Avon's 1967 taxes became due on June 15, 1968, and they were paid in full from that date until a deficiency was created on September 15. It is the latter date from which interest should run.

This conclusion is supported by *Central Fibre Products Co. v. United States*, 115 F.Supp. 147 (N.D.Ill.1953). There the IRS granted the taxpayer a $65,000 refund in July 1947, but in February 1948 decided that it should have charged a $35,000 deficiency instead. The erroneous refund had thus created a gross deficiency of $100,000, and the Service, as in this case, attempted to collect interest on the full amount for the period before, as well as after, the improper refund was made. The court held, however, that for the period preceding the refund the taxpayer should pay interest only on the net deficit of $35,000 then actually existing; the remaining $65,000 was money which the taxpayer did not owe at that time, *id.* at 150. The congruence of the case before us with *Central Fibre* is clear. Avon did not, during the period between June and September, 1968, owe the $98,000 on which it has been charged interest. Indeed, Avon's claim for a return of interest would seem to be an *a fortiori* application of *Central Fibre*. In that case, as the final audit established, the corporation originally underpaid its taxes, whereas Avon initially overpaid them by more than $17,000.

### III.

The cases on which the Government relies involved a situation much different from that of the later-created deficiency presented by *Central Fibre* and by the present case. In *Babcock & Wilcox Co. v. Pedrick*, 212 F.2d 645 (2d Cir. 1954), *cert. denied*, 348 U.S. 936, 75 S.Ct. 355, 99 L.Ed. 733 (1955), the corporation's 1942 tax liability, composed of income and excess profits taxes, was limited by a ceiling of 80% of its income. The IRS found that the company had overpaid the excess profits levy—because 10% of that component would be refunded after the war—and caused a corresponding deficiency in its income tax. But the IRS did not rest content with the fact that at all times it had in its hands the 80% of Babcock & Wilcox's income to which it was entitled. Because interest did not begin to run as promptly on an overpayment as on a deficiency, the. Service treated the taxes as separate and asserted that the company thus owed a net interest payment.

Stating that "the issue comes down in essence to the question whether [the taxes were separate]," *id.* at 649, we upheld the IRS, and on that basis distinguished *Central Fibre*, where only one tax was involved, *id.* at 650 n. 4. The same ground distinguishes Avon's case. Here, as in *Central Fibre*, there is only one tax involved, and there is no question whether an overpayment was so unrelated to a deficiency that the two could not be set off against each other before assessing interest. Before September 15, 1968, not only had the taxpayer paid the full sum for which it was liable, but its payment was not deficient in .any respect.

---

4. Avon contends that the applicable provision is I.R.C. § 6602. Under that section, any tax amount "which has been erroneously refunded, and which is recoverable by suit . . ." bears interest "from the date of the payment of the refund." The Government, while conceding that on a literal reading § 6602 might apply to this case, argues that the legislative history indicates that it should cover only the situation in which an erroneous refund actually has been recovered by suit. We need not resolve this question, because we conclude that even under § 6601(a) Avon should not be charged with interest for the period before September 15, 1968.

The other case on which the Government relies heavily, *General Electric Co. v. United States*, 369 F.2d 724, 177 Ct.Cl. 660 (1966), involved an issue similar to that in *Babcock & Wilcox*, and is distinguishable for comparable reasons. There, General Electric paid its 1944 taxes, and then applied for and eventually received a tentative amortization allowance of $4.6 million. This special refund was valid, but the IRS later determined that there were other deficiencies, totaling $6.8 million, in G.E.'s initial remittance.

As in *Babcock & Wilcox*, the IRS treated the deficiency ($6.8 million) and the surplus ($4.6 million) separately, and took advantage of the fact that under the Code interest began to run sooner on an underpayment than on an overpayment. Thus, G.E. was charged with interest for an interim period on $6.8 million—although its payment during that time was deficient by only $2.2 million. Only one tax was involved, but as in *Babcock & Wilcox*, the IRS's determination was upheld because the court decided not to set off the overpayment against the deficiency before assessing interest.[5] In the instant taxpayer's case, by contrast, no set-off question arises.

### IV.

We believe it appropriate to discuss one further consideration. Treas.Reg. § 301.-6611–1(h)(2)(vii)[6] provides that, if a taxpayer elects to credit against his liability for one taxable year an overpayment shown on his return for the preceding year, he collects no interest even though at one point he has paid the IRS more than was due.

Avon does not contest this principle, the validity of which is clearly established. *Martin Marietta Corp. v. United States*, 572 F.2d 839 (Ct.Cl.1978); *Owens-Corning Fiberglas Corp. v. United States*, 462 F.2d 1139, 199 Ct.Cl. 61 (1972). Indeed, Avon never attempted to collect interest on the apparent $115,626.32 overpayment indicated by its return of September 15, 1968, nor does it now claim interest on the smaller sum of $17,024.15 that the IRS concedes it overpaid on June 15. It contends merely that it should not be charged with interest for the interim period on the $98,602.17 deficiency created on September 15.

Thus, this case is not covered by the cited regulation. Nor do we believe that it provides a helpful analogy. Indeed, the fact that there is a Treasury Regulation explicitly denying the taxpayer interest in the situation of *Owens-Corning, supra*—but nothing comparable suggesting that Avon must pay interest for its later-created deficiency—would indicate that the contrary result is compelled. A taxpayer initially overpaying taxes has no one to blame but himself. Despite this, of course, the Code ordinarily does allow him interest, I.R.C. § 6611(a), but, even if the taxpayer asks for a simple refund the Government can avoid interest charges by restoring the overpayment within 45 days. And, if instead, the taxpayer elects to treat the overpayment as a contribution to his tax for the succeeding year, it is reasonable to consider that payment as a voluntary anticipatory remittance, not entitled to interest, *see P. Lorillard Co. v. United States*, 226 F.Supp. 694, 698 (S.D.N.Y.), *aff'd*, 338 F.2d 499 (2d Cir. 1964).

---

5. Moreover, *General Electric*, like *Babcock & Wilcox*, was decided under the 1939 Code. In both cases the court conceded that strong equities were on the side of the taxpayer, but believed the result compelled by statute, *see* 212 F.2d at 650, 369 F.2d at 727, 729. Section 292(a) of the 1939 Code, in providing that interest be charged "from the date prescribed for the payment of the tax," did not contain the key clause of the current § 6601(a): "If any amount of tax . . . is not paid on or before the last date prescribed for payment . . . ."

One case cited by Judge Motley, *P. Lorillard Co. v. United States*, 226 F.Supp. 694 (S.D.N.

Y.), *aff'd*, 338 F.2d 499 (2d Cir. 1964), was decided under the 1954 Code. There, although the taxpayer had overpaid its first installment by $3 million, it was charged with interest on $128,000 in taxes for income not reported on its preliminary return. The court's theory was that the overpayment had been voluntary, and that it would therefore be "artificial" to say that it had included a payment of tax on unreported income. Thus, *Lorillard*, like *Babcock & Wilcox* and *General Electric*, centered on a set-off question not present in Avon's case.

6. The provision is also contained in Treas.Reg. § 301.6402–3(b)(5).

This balance of considerations, of course, does not apply in Avon's case, where it is the Government that has collected interest. The sole rationale for a Government assessment of interest—compensation for delay in payment of tax—could not be invoked until September 15. On that day Avon shifted part of its payments from its 1967 account to that for 1968. That could not erase, and Treas.Reg. § 6611–1(h)(2)(vii) does not require us to ignore, the hard fact that between June and September it had paid its 1967 taxes in full.

Finding that Avon's claim for return of the interest paid for that period is justified, we reverse the judgment of the District Court.