**In re VENDELL HEALTHCARE, INC.**

**Bankruptcy No. 97–02213.**

United States Bankruptcy Court,
M.D. Tennessee.

July 8, 1998.

John R. Keenan, Special Asst., U.S. Atty., Nashville, TN, for I.R.S.

Brian Swett, Katten Muchin & Zavis, Chicago, IL, for Debtor.

## MEMORANDUM

GEORGE C. PAINE, II, Chief Judge.

This matter is before the court on the cross-motions for summary judgment filed by the United States of America, on behalf of its agency, the Internal Revenue Service ("IRS") and Vendell Healthcare, Incorporated ("Debtor"). The issues for decision are the breadth of the court's jurisdiction pursuant to 11 U.S.C. § 505(a) and the correct legal standard to be applied to calculate the interest on the debtor's tax liability for the fiscal years ending June 30, 1991 and 1992. For the reasons hereinafter cited, the court grants both summary judgment motions in part and denies both motions in part.

The parties agreed that the following material facts are not in dispute:

1.  The debtor, Vendell Healthcare, Inc., filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on March 6, 1997.

2.  The United States, Internal Revenue Service, filed a Proof of Claim for federal taxes, dated May 6, 1997, setting forth priority claims in the amount of $616,215.32.

3.  On October 7, 1997, the Court entered an order confirming the debtor's second amended plan of reorganization dated August 22, 1997.

4.  On or about November 27, 1997, the debtor filed an objection to the Internal Revenue Service's proof of claim.

5.  The Court has jurisdiction over the debtor's objection to the IRS Claim pursuant to 28 U.S.C. §§ 157 and 1334 and section 505(a)(1) of the Bankruptcy Code. The debtor's objection to the proof of claim filed by the Internal Revenue Service is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

6.  The debtor filed its federal income tax returns on a fiscal year basis.

7.  As a fiscal year taxpayer, the debtor was required to file its income tax returns by the 15th day of the third month following the close of its fiscal year. [I.R.C. § 6072(b)].

8.  For the debtor's fiscal year ending June 30, 1991, the debtor's income tax return was initially required to be filed with the Internal Revenue Service before September 15, 1991.

9.  On November 4, 1991, the debtor received a six-month automatic extension of time to file its federal income tax return for its fiscal year ending June 30, 1991.

10.  The extended filing date for the debtor's federal income tax return for the fiscal year ending June 30, 1991 was March 15, 1992.

11.  On March 18, 1992, the debtor filed with the Internal Revenue Service its corporate federal income tax return for its fiscal year ending June 30, 1991.

12.  The debtor made no estimated or other income tax payments for its fiscal year ending June 30, 1991.

13. The debtor's return showed a zero tax liability for its fiscal year ending June 30, 1991.

14. For the debtor's fiscal year ending June 30, 1992, the debtor received a six-month extension of time to file its federal income tax return to March 15, 1993.

15. The debtor made the following estimated tax payments for its fiscal year ending June 30, 1992:

| Date | Amount |
| --- | --- |
| April 15, 1992 | $ 68,000 |
| June 12, 1992 | $532,000 |
| July 1, 1992 | $ 50,000 |
| September 6, 1992 | $100,000 |
| Total | $750,000 |

16. On March 15, 1993, the debtor filed its federal income tax return for its fiscal year ending June 30, 1992.

17. The total tax shown on the debtor's return was $170,606.00. The Internal Revenue Service assessed the amount of $169,766.80 against the debtor for the fiscal year ending June 30, 1992.

18. Prior to filing its income tax return for its fiscal year ending June 30, 1992, the debtor elected to have the Internal Revenue Service apply $579,394.00 of the debtor's estimated tax payments for the fiscal year ending June 30, 1992, as an estimated tax payment for the debtor's fiscal year ending June 30, 1993.

19. The Internal Revenue Service complied with the debtor's election on October 15, 1992.

20. The Internal Revenue Service conducted an examination of the debtor's corporate federal income tax returns for its fiscal years ending June 30, 1991 through June 30, 1995.

21. The examination resulted in the debtor agreeing to income tax deficiencies of $806,139.00 for its fiscal year ending June 30, 1991 and $1,196,065.00 for its fiscal year ending June 30, 1992.

22. The Internal Revenue Service assessed the debtor's income tax deficiencies for its fiscal year ending June 30, 1991 and June 30, 1992 on March 21, 1997.

23. For its fiscal year ending June 30, 1994, the debtor had a substantial net operating loss carryback of which $281,019.00 was carried back to the debtor's tax liability for the fiscal year ending June 30, 1991 and $1,259,236.80 was carried back to the debtor's tax liability for the fiscal year ending June 30, 1992. These net operating loss carrybacks did not full[y] pay the debtor's tax liabilities.

24. If the Court grants the United States' motion for summary judgment, the debtor's unpaid income tax liabilities as of the petition date totaled $485,473.21 for its fiscal year ending June 30, 1991 and $144,628.16 for its fiscal year ending June 30, 1992.

25. Prior to filing its income tax return for its fiscal year ending June 30, 1993, the debtor elected to have the Internal Revenue Service apply $1,429,394.00 of the debtor's estimated tax payments for the fiscal year ending June 30, 1993 as an estimated tax payment for the debtor's fiscal year ending June 30, 1994.

26. The Internal Revenue Service complied with the debtor's election on October 15, 1993.

27. On April 6, 1995, the Internal Revenue Service issued a refund to the debtor in the amount of $1,429,394.00

28. The debtor has made no formal request of the Internal Revenue Service to abate interest assessed against the debtor under Internal Revenue Code section 6404.

In addition to these agreed upon facts, the debtor submitted the following additional facts as material facts that are not in dispute. The IRS made no attempt to discredit or otherwise dispute these facts:

1. In addition to the $750,000 identified by the IRS in estimated tax payments, the debtor made the following additional estimated tax payments: $163,000 on October 15, 1992, $163,000 on December 15, 1992 and $524,000 on March 15, 1993 for its fiscal year ending June 30, 1993. The total of the estimated payments was $1,429,394.

2. The debtor had no tax liability for the fiscal year ending June 30, 1993.

3. The debtor elected to have the estimated tax payments in the aggregate amount of $1,429,394 applied as an estimated payment for its fiscal year ending June 30, 1994.

4. The debtor had no tax liability for the fiscal year ending June 30, 1994.

Based on these facts, the debtor asserts that the IRS should not assess interest for the tax liabilities for the fiscal years ending June 30, 1991 and June 30, 1992 when the IRS held at least the amount of the debtor's deficiency in estimated payments. The IRS asserts that it calculated the interest in accordance with Revenue Ruling 88–98, and that once the debtor made the election to credit its purported overpayments to a subsequent tax year, its fiscal year taxes for 1991 and 1992 were both due and unpaid and therefore subject to an interest assessment.

### III. Discussion

#### A. Extent of Jurisdiction Pursuant to § 505(a)

Section 505(a) provides as follows:

(a) (1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or adminis-

trative tribunal of competent jurisdiction before the commencement of the case under this title, or

(B) any right of the estate to a tax refund, before the earlier of—

(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

(ii) a determination by such governmental unit of such request.

11 U.S.C. § 505(a) (West, 1998).

The IRS argues that § 505(a) does grant the court jurisdiction in this case to determine if the IRS properly calculated the interest, but does not give the court the authority to abate interest properly assessed against the debtor. In other words, the court has the authority to determine if the interest was calculated correctly, but not to consider allegations of delay or error of IRS agents. Allegations of the delay are considerations only when the abatement of interest is considered. The debtor argues, however, that the court has unlimited jurisdiction to hear all aspects of this claim.

As stated by the bankruptcy court in the Eastern District of Tennessee, there are two main goals of § 505:

Two general policies underlie § 505. It allows prompt resolution of a debtor's tax liability, where the liability has not been determined prior to the bankruptcy proceeding, in the same forum addressing the debtor's overall financial condition and it protects creditors from the dissipation of the estate's assets which could result if the debtor failed to challenge a prepetition assessment.

*Roberts v. Sullivan County (In re Penking Trust)*, 196 B.R. 389, 393 (Bankr.E.D.Tenn. 1996). The general unsecured creditors, not the debtor, are the intended beneficiaries of § 505(a).

In *Koger Properties, Inc.*, 172 B.R. 351, 352 (Bankr.M.D.Fla.1994) a chapter 11 debtor sought a determination of its tax liability to a municipality. The court stated:

Although the present controversy does not challenge the assessed value of the

property or the millage rate upon the [sic] which the tax was computed, it is clear that interest which accrues on the tax liability becomes part of that liability and therefore falls within the purview of § 505. The court concluded that § 505(a) gave the court jurisdiction to determine the interest on the tax liability. *Id.* at 352; *see also Kiesner v. Internal Revenue Service (In re Kiesner)*, 194 B.R. 452 (Bankr.E.D.Wis.1996) (finding jurisdiction to resolve amount of taxes owed, including interest).

Clearly, § 505(a) endows the court with jurisdiction to compute an interest calculation as part of a determination of the "amount" of a tax. The issue, therefore, is the expanse of that jurisdiction. The Seventh Circuit discussed § 505(a) in a similar context in *Carlson v. United States (In re Carlson)*, 126 F.3d 915 (7th Cir.1997). In that case, the chapter 11 debtor objected to the amended proof of claim filed by the IRS for unpaid taxes, penalties and interest. The Seventh Circuit held that § 505 permitted the bankruptcy court to determine the amount or legality of any tax, but that statute did not permit the court to abate interest assessed by the IRS on unpaid tax liability.[1] Only the Secretary of Treasury could abate interest as provided in the Internal Revenue Code. Section 505(a) gives the bankruptcy court the power to determine "the amount or legality" of the interest assessment. *Id.* at 920. The exact words of the court in regards to section 505(a)'s gamut were as follows:

> [T]he [debtors] never assert that either § 6601(a)[2] itself or its application to their situation was illegal; they only say it was unfair. They also never argued that the IRS miscalculated the amount of interest due. Section 505(a)(1) therefore, has no application to a situation of this sort.

*Id.*

■ The holding in *Carlson* explains that the bankruptcy court has the authority to determine the amount of the IRS claim, including any interest calculations, but § 505(a) is not so broad as to allow the bankruptcy court to consider the fairness of the amount of the interest calculation. Allegations of delay or misconduct causing an inappropriate calculation of interest should be addressed by the Secretary of the Treasury in an action to abate interest. The debtor may not utilize § 505(a) to present its arguments about alleged omissions, misconduct or delay by the IRS that purportedly inflated the amount of their tax liability by the additional accrual of interest.

The court therefore finds that it does have jurisdiction to calculate the interest on the debtor's claim. However, the court does not have jurisdiction pursuant to § 505(a) to review facts that involve claims of delay or misconduct on the part of the IRS. Accordingly, the court grants the IRS's motion for summary judgment on this particular issue, and denies the debtor's motion for summary judgment on this same issue.

## B. Calculation of Interest

■ It is the debtor's position that the IRS incorrectly calculated the interest on the fiscal year 1991 and 1992 taxes because the IRS was holding estimated tax payments at that time which would have satisfied or reduced the tax liability for those years. The debtor did not request refund of the overpaid amounts until 1995, and therefore, according to the debtor, no interest should be attributed to that period where the debtor did not have "use or benefit" of its own funds.

The IRS, on the other hand, argues that the Internal Revenue Code requires that if taxpayer fails to pay any amount of tax on or before the last day prescribed for payment, then the taxpayer is statutorily required to pay interest at the rate defined in § 6621 to the government for the period of underpay-

---

1. Section 6404(e) of the IRC provides that in the case of assessment of interest on any deficiency attributable in whole or part to any error or delay by an officer or employee of the Internal Revenue Service in performing a ministerial act, the Secretary may abate the assessment of all or any part of such interest for any period.

   The debtor in this case made no formal request for the abatement of interest.

2. 26 U.S.C. 6601(a) states:

   [i]f any amount of tax imposed by this title ... is not paid on or before the last date prescribed for payment, interest on such amount ... shall be paid for the period from such last date to the date paid.

   (West, 1997).

ment. From the IRS's perspective, the debtor became statutorily obligated to pay taxes for the fiscal years ending June 30, 1991 and 1992 when it elected to have any purported overpayments credited toward subsequent tax years.

In 1978, the Second Circuit decided *Avon Prods. Inc. v. United States*, 588 F.2d 342 (2d Cir.1978). The question before the court was whether interest ran on the deficiency from the due date for payment of the tax that was underpaid or from the date (September 15) on which the taxpayer filed the return and on which was due the installment of the next year's estimated tax, to which the taxpayer elected to apply the overpayment shown on the return. Section 6601(a), according to the court, statutorily obligates interest to accrue only when the tax is both due and unpaid. The court explained that interest is the charge placed on the taxpayer for the loss of the use of the money that the government is owed. Therefore until the tax is both "due" and "unpaid" the government has not lost the benefit of the use of the money.

The IRS insists that its interest calculations were made pursuant to Revenue Ruling 88–98 and the holding of *Avon Products*. Revenue Ruling 88–98 states in parts as follows:

> When a taxpayer claims an overpayment on a return filed on the original due date or on a return filed with an extension, and the claimed overpayments is applied in full against an installment of the next year's estimated tax, interest on a subsequently determined deficiency for the earlier year runs from the due date of that installment on that part of the deficiency that is equal to or less than the calculated overpayment

and from the original due date of the remainder.

**Rev. Rul.** 88–98, 1988–2 C.B. 356. The IRS treated the estimated tax payments (totaling $579,394) as payment of the tax deficiency for the period of September 15, 1992 until October 15, 1992. At that point (when the debtor made the election), the IRS gave the debtor a credit for the fiscal year ending June 30, 1993. The IRS asserts that at this point, October 15, 1992, the debtor gained the benefit of the use of its money and that the interest for the fiscal year ending June 30, 1992 began to accrue.[3]

The debtor argues that the debtor's decision to credit its overpayments for its taxable year ending June 30, 1992 toward its taxable year ending June 30, 1993 and to credit its overpayment for its taxable year ending June 30, 1993 toward payment for tax year ending June 30, 1994, conferred no economic benefit upon the debtor. This is so, according to the debtor, because it had no taxable income for those years of the overpayment. In other words, the IRS had actual and effective use of the debtor's funds until a refund was requested in 1995 because there was no tax liability against which the overpayments were or actually could have been credited against.

The debtor relies upon the unpublished decision of *Sequa Corp. v. United States*, 1996 WL 194323 (S.D.N.Y.1996). In that case, the debtor reported an $8.7 million overpayment in 1990 which it elected to have credited against its 1991 tax liability. The taxpayer subsequently filed an amended 1990 return showing an additional liability of $1.7 million. The IRS assessed interest on this $1.7 million from the date on which the tax-

---

**3.** According to the IRS, the date that a taxpayer gains the benefit of the funds as a payment on account of the succeeding year's estimated tax determines the date the prior year's tax becomes unpaid for purposes of IRC § 6601(a) and Revenue Ruling 88–98. The IRS states that it gave the debtor the economic benefit of its overpayments when it elected to apply the overpayment to the fiscal year ending 1993 as an estimated tax payment. According to the IRS, once the election took place, the debtor lost the ability to use that money for purposes of an earlier deficiency.

In Revenue Ruling 88–98, the Commissioner found:

> The date that the taxpayer gained benefit of the funds as a payment on account of the succeeding year's estimated tax determines the date the prior year's tax became unpaid for purposes of section 6601(a) of the Code.

Rev. Rul. 88–98, 1988–2 C.B. 356. However, when there is no succeeding year tax liability to apply the tax credit against, the subsequently determined, previous year taxes are not yet both "due" and "unpaid." Nonetheless, the IRS views an estimated payment to be to the debtor's benefit making the prior year's liability both "due" and "unpaid" at the time of the election.

payer's 1990 tax return was due through March 15, 1992, the date on which the taxpayer again had an overpayment that could be used to satisfy its 1990 tax liability. The taxpayer paid the assessed interest and then sued for a refund.

The court held that the 1990 overpayment was never effective as a payment of Sequa's actual or estimated 1991 taxes and the IRS never lost use of any portion of the 1990 overpayment including the $1.7 million that was ultimately credited against Sequa's redetermined 1990 tax liability. If the reported overpayment of the 1990 taxes was ineffective as a payment of its estimated taxes, and the IRS was in fact "receiving interest" (enjoying use of the debtor's funds) then any assessment of interest on such overpayment would amount to an impermissible penalty.

In the *Sequa* decision, the court denied the IRS's motion to dismiss. Both parties then filed motions for summary judgment. Just recently, the United States District Court for the Southern District of New York ruled on those motions for summary judgment. The court explained that the issue before the court was whether:

> when a taxpayer elects to credit its overpayment of tax in year one to its estimated tax liability in year two, but then seeks to reduce the amount of the overpayment credit to pay for additional tax liability in year one, the IRS properly assessed interest on the amount the overpayment credit is reduced for the period of time between the election to credit the overpayment to year two's estimated tax liability and the time when the IRS applies the overpayment to the year one's additional tax liability.

*Sequa Corp. v. United States*, 1998 WL 307379 (S.D.N.Y., June 10, 1998). The court concluded that the government never lost use of the money, and that further the year one taxes were not at any point both "due and unpaid." The taxpayer's election does not constitute a payment of the succeeding year's taxes. The fact that the taxpayer used its purported overpayments to offset a subsequently determined liability does not indicate that the government was deprived of the use of the monies for the period when the government possessed those funds. *Id.* citing *May Department Stores Co. v. United States*, 36 Fed.Cl. 680 (Fed.Cl.1996).[4]

The court finds the reasoning of the *Sequa* decisions persuasive. Because Vendell had no tax liability for the fiscal years of 1993 and 1994, the government was not deprived of use of Vendell's money since it was holding estimated tax payments that would reduce or satisfy the tax deficiencies. At no point, therefore, were the 1991 and 1992 taxes "due" and "unpaid" to the extent the IRS held the overpayments to reduce or satisfy the tax liabilities. The IRS held those monies until the debtor received the refund in 1995.

The court finds that interest should only accrue on the part of the deficiency that was not satisfied by the amount of overpayments held by the IRS and the deficiency that remained unpaid after Vendell received its refund from the IRS. The overpayments were not operative as payment at the time of the election, but instead became operative when the overpayment was effective as a payment. Because there was no tax liability owed during 1993 and 1994, those overpayments were not effective as payments toward those years.

Accordingly, the court grants the summary judgment motion of the debtor on the legal issue regarding the calculation of the interest for its tax liabilities for the fiscal years ending June 30, 1991 and 1992. Likewise, the

---

4. The IRS asserts that the *Sequa* decision was either wrongly decided or distinguishable. In the view of the IRS, the case was wrongly decided because it is inconsistent with the holdings of *Avon Products, Inc. v. United States*, 588 F.2d 342 (2d Cir.1978); *May Department Stores Co. v. United States*, 36 Fed. Cl. 680 (1996); *Kimberly Clark Tissue Co. v. United States*, 1997 U.S. Dist. LEXIS 3100 (E.D.Pa. March 19, 1997) and Revenue Ruling 88–98. The IRS argues that the *Sequa* decisions are distinguishable in that the debtor in this case, as in *Sequa*, never sought to reapply any portion of its purported overpayments credited to succeeding tax years to the subsequently determined tax deficiency for fiscal years 1991 and 1992. While the court understands the distinction relied upon by the IRS, the court nonetheless finds the reasoning of the two decisions persuasive.

court denies the IRS's summary judgment motion on this precise issue.

### IV. Conclusions

The court grants the IRS's summary judgment motion as to the issue concerning the breadth of the court's jurisdiction pursuant to § 505(a). The court finds that it does have jurisdiction to calculate the interest on the debtor's tax liability but not to determine allegations of delay or misconduct on the part of the IRS thereby unnecessarily inflating the interest due on those liabilities. The court denies the debtor's summary judgment motion on this issue.

As to the interest calculation, the court grants the debtor's motion for summary judgment and denies the IRS's motion. The court finds that the debtor is statutorily obligated to pay interest on its tax liabilities for the fiscal years ending June 30, 1991 and June 30, 1992 for all periods of time and to the extent that the IRS was not holding sufficient funds to satisfy the debtor's tax obligations. The debtor is also obligated to pay interest from the time of its refund until the petition date. The court directs the IRS to recalculate the interest owed on its claim in accordance with the findings of this Memorandum and Order within 45 days from the date of entry of the Order.

It is, THEREFORE, so ordered.