T.C. Summary Opinion 2008-126


UNITED STATES TAX COURT


LAURIE CALDER-GREEN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1705-06S.              Filed September 22, 2008.


Laurie Calder-Green, pro se.

Steven M. Webster, for respondent.


ARMEN, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

---

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code of 1986, as amended.

The primary issue for decision in this collection review case is whether it was an abuse of respondent's discretion to deny effective tax administration relief to petitioner from her self-reported tax liability for the taxable year 2001. We hold that it was not. We must also decide whether it was an abuse of respondent's discretion not to abate interest on petitioner's underpayment of tax. We hold that it was not.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' extremely confusing stipulation of facts and morass of accompanying exhibits.

At the time the petition was filed, petitioner resided in North Carolina.

Petitioner and her ex-husband married in 1978 and separated in 2000. They divorced in 2001. It was not an amicable divorce.

Petitioner's mother arranged for an attorney, a "golfing buddy of [petitioner's] brother-in-law", to represent petitioner during the divorce proceedings. At the urging of her attorney, petitioner agreed to purchase her ex-husband's half of the "marital estate" in South Carolina.[2] Petitioner testified that

_____

[2] Even though petitioner and her ex-husband were not yet divorced, they were separated and apparently negotiations on the divorce settlement had begun. For clarity, we refer to petitioner's ex-husband as her ex-husband throughout this

(continued...)

her attorney arranged for a bank loan to enable her to refinance the mortgage and purchase her ex-husband's interest in the house. When petitioner refused to pay the attorney's bill, the attorney refused to continue the representation, and the loan offer he had arranged was rescinded.

Petitioner's mother gave her approximately $38,000 to replace the lost loan and help petitioner keep the house. Instead, petitioner used the money to move to an apartment in North Carolina so her son could attend college there. She also paid off some debt and "fixed up" the house in South Carolina.

In the fall of 2000, petitioner refinanced the "marital estate" and received $53,000. Petitioner did not use the proceeds or any portion thereof to buy out her ex-husband; instead, the proceeds were disbursed as follows: Approximately $3,581 went to closing costs; $6,724 went to pay off credit card debt; and $42,695 went directly to petitioner. She repaid her mother and was left "about $3,000 to play with".

Petitioner's divorce was finalized in the fall of 2001. Despite her best efforts at negotiating a favorable divorce settlement, petitioner was unhappy with the result. A South Carolina court ordered petitioner to pay her ex-husband

---

[2](...continued)
opinion, regardless of the time period involved.

$18,039.47 within 30 days in compensation for his interest in both the house and a camper.[3]

Finding herself in ever-increasing debt and having used all of her available resources on other things, petitioner liquidated the entire $41,494 balance of her individual retirement account (IRA) in order to pay her ex-husband the now-court-ordered amount of $18,039.47. Petitioner spent the rest of the money making payments on her van, remodeling, buying appliances, and paying expenses for her children such as braces and "graduation/college application fees".

Petitioner timely filed her Federal income tax return for 2001. She properly reported the IRA distribution as taxable income along with the section 72(t) additional 10-percent tax due on a portion of the distribution. See, e.g., sec. 72(t)(2), (7), (8) (exempting from the 10-percent additional tax certain qualified medical, educational, and home-buying expenses).

When she filed her return, petitioner did not pay the tax shown as due. Under separate cover, petitioner mailed a letter to the IRS offering to pay $3,000 in satisfaction of her

---

[3] Petitioner argues that she should not have had to pay her ex-husband so much for his share of the house; she testified that he allegedly sold some of the fixtures and otherwise "destroyed" the house. We can appreciate petitioner's frustration with the divorce proceedings, but any perceived inequities resulting from those proceedings have no bearing on the tax consequences of the issues before us.

approximately $10,000 reported tax liability.  Respondent has no record of having received petitioner's offer letter.

On May 27, 2002, respondent assessed the tax reported, interest, and an addition to tax under section 6651(a)(2) for failure to pay the amount shown on the return.

Upon receiving petitioner's Form 656, Offer in Compromise (OIC), in September 2002, respondent requested more information. Petitioner responded on October 21, 2002.  Petitioner was not contacted again by respondent until April 9, 2003, when respondent requested more information to properly evaluate the OIC.  Discussions between the parties continued over the course of the year, and forms and supporting documents were sent back and forth.  Having determined that she could pay the liability in full,[4] respondent rejected petitioner's OIC on December 2, 2003, and further determined that petitioner did not meet the criteria for an OIC on the basis of the effective tax administration (ETA) provisions of section 7122 and its accompanying regulations.

Petitioner did not like the response she received from the IRS.  She interpreted the rejection of her OIC as a lack of understanding as to how difficult things had been since her divorce, and she spent time researching tax laws and offers-in-

---

[4]  Petitioner remarried in 2002 and is gainfully employed as a teacher and athletic coach.  Respondent determined that she had both equity in her residence and future income potential exceeding her total 2001 liability.

compromise.  In January 2004, petitioner appealed the rejection of her OIC.  After more discussions and lengthy negotiations between the parties, the rejection was sustained by respondent's Office of Appeals on December 17, 2004.  Petitioner's requests for interest abatement were also rejected.

Respondent issued a Final Notice of Intent to Levy and Your Right to a Hearing in April 2005.  After offsets from other taxable years, petitioner's Federal income tax liability for 2001 was approximately $8,522.

Petitioner felt that no one at the IRS understood her plight or her arguments, and she began contacting her legislators and the IRS Taxpayer Advocate Service in the spring of 2005.  She also filed a Form 12153, Request for a Collection Due Process Hearing (CDP hearing).

At the CDP hearing, petitioner submitted a second OIC, also based on ETA, of $1,587.[5]  The record is unclear as to whether the amount offered was inclusive of amounts already paid to or collected by the IRS.  Further adding to the confusion, respondent decided that petitioner's changes to the Form 656 rendered the offer void.  Regardless, the OIC was evaluated and rejected, and no offer of an installment agreement or other type

---

[5]  Although petitioner submitted two different offers-in-compromise, we refer to them later in this opinion as a single OIC because our reasoning applies with equal force to both of her offers-in-compromise.

of collection alternative was agreed upon.[6]

Having determined, again, that petitioner did not qualify for an OIC on ETA grounds, and having explained, again, the reasoning behind the rejection, respondent issued petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 on December 23, 2005.

The case came before this Court in 2006 and was remanded to respondent's Office of Appeals for further consideration. Petitioner's OIC was once again rejected, and the reasons for the rejection and refusal to abate interest were explained. On August 14, 2007, respondent issued the Supplemental Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 from which petitioner now appeals.

### Discussion

#### A. Collection Actions

Section 6330 generally provides that the Commissioner cannot proceed with collection by levy on a taxpayer's property until the taxpayer has been given notice of and the opportunity for an administrative review of the matter (in the form of an Appeals Office hearing) and, if dissatisfied, with judicial review of the administrative determination. See <u>Davis v. Commissioner</u>, 115

---

[6] Petitioner claims she did not propose any other type of collection alternative because no information had been provided to her about her options. However, the record is clear that petitioner rejected respondent's offer of an installment agreement on at least one occasion.

T.C. 35, 37 (2000); Goza v. Commissioner, 114 T.C. 176, 179 (2000).

Section 6330(c)(1) imposes on the Appeals Office an obligation to verify that the requirements of any applicable law or administrative procedure have been met. Section 6330(c)(2) prescribes the matters that a person may raise at an Appeals Office hearing. In sum, section 6330(c)(2)(A) provides that a person may raise collection issues such as spousal defenses, the appropriateness of the Commissioner's intended collection action, and possible alternative means of collection. Section 6330(c)(2)(B) further provides that the existence and amount of the underlying tax liability can be contested at an Appeals Office hearing if the person did not receive a notice of deficiency for the tax in question or did not otherwise have an earlier opportunity to dispute the tax liability.[7] See Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, supra at 180-181; see also Magana v. Commissioner, 118 T.C. 488, 492 (2002); Wooten v. Commissioner, T.C. Memo. 2003-113.

It is well settled that where the validity of the underlying tax liability is properly at issue in a collection review proceeding, the Court will review the matter de novo. Goza v.

_____

[7] Sec. 6330 was amended Aug. 17, 2006. See Pension Protection Act of 2006, Pub. L. No. 109-280, sec. 855(a), 120 Stat. 1019. Therefore, any determinations made at a CDP hearing after Oct. 16, 2006, are the exclusive jurisdiction of this Court. Id. sec. 855(b), 120 Stat. 1019.

Commissioner, supra at 181-182.  Where the validity of the underlying tax liability is not at issue, the Court will review the Commissioner's administrative determination for an abuse of discretion.  See, e.g., id. at 182.

An abuse of discretion occurs when the Commissioner takes action that is arbitrary, capricious, without sound basis in fact or law, or is not justifiable in light of the circumstances.  See, e.g., Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Mailman v. Commissioner, 91 T.C. 1079, 1084 (1988).

Petitioner agrees that she owes the tax and never contested her liability for the tax due; thus we review the case for an abuse of discretion.  Petitioner, however, insists that it would be unfair to make her pay the amount due given her circumstances, and she argues that the ETA provision of section 7122 mandates that she not be required to pay the liability, the addition to tax, or any interest on her Federal income tax obligation.

B.  Effective Tax Administration

Section 7122 and its accompanying regulations authorize the Secretary to compromise any civil case arising under the internal revenue laws.  Compromises may be made on three grounds:  (1) Doubt as to liability; (2) doubt as to collectibility; and (3) promotion of effective tax administration.  Sec. 301.7122-1(b), Proced. & Admin. Regs.  ETA is further divided into hardship and nonhardship ETA.  Id.  Respondent determined that petitioner does

not meet the criteria for acceptance of an OIC on ETA grounds; because petitioner makes both hardship and nonhardship ETA arguments at various points in the proceedings, we discuss both.

Section 301.7122-1(c), Proced. & Admin. Regs., sets forth factors that would support (but are not conclusive of) a finding of economic hardship:  a long-term illness, medical condition, or disability which is expected to exhaust the taxpayer's financial resources; the total depletion of a taxpayer's income resulting from the provision of dependent care; or the inability to exploit existing asset wealth in order to finance basic living expenses and satisfy the outstanding tax liability.  None of those factors are present here.

Petitioner also argues that her case is "so important and so essential to * * * public policy" that it was an abuse of discretion not to accept her OIC on public policy grounds. However, this argument is not sound.

Compromises are permitted on public policy and fairness grounds where there is no doubt as to liability and the liability could be collected in full without causing economic hardship; it is up to the taxpayer to demonstrate that his or her circumstances are compelling enough to justify the compromise notwithstanding the inherent inequity to other taxpayers.  See sec. 301.7122-1(b)(3)(ii), (c)(3)(iv), Proced. & Admin. Regs.;

see also IRM pt. 5.8.11.2.2 (May 15, 2004).  Petitioner has not satisfied that burden.

Tax jurisprudence is replete with cases more extreme than the one at bar where taxpayers have found themselves in difficult financial positions because of the application of a tax provision that, as applied to them, had adverse consequences; these taxpayers were denied relief under ETA provisions.  See, e.g., Speltz v. Commissioner, 124 T.C. 165 (2005), affd. 454 F.3d 782 (8th Cir. 2006);  Wai v. Commissioner, T.C. Memo. 2006-179.  Thus, we conclude that respondent did not abuse his discretion in the instant case.

Many people encounter financial difficulties as a result of the economic changes that typically accompany divorce.  Although we understand petitioner's desire to help pay for her children's college educations, the fact that her children play Division I sports and find it difficult to work during the school year does not entitle petitioner to a compromised tax liability on the basis of financial hardship or public policy.  More to the point, petitioner has not satisfactorily demonstrated that her situation is so unique or warrants disparate treatment from the myriad other taxpayers who pay their taxes in full and on time when they and their families, too, have opportunities which may be made more difficult as a result of their tax obligations.  Thus it is

clear that in this case, petitioner must satisfy her tax liability in full.

### 1. The Underlying Tax Liability[8]

The South Carolina court ordered petitioner to pay her ex-husband a sum of money. Like many taxpayers, petitioner was forced to use a portion of her retirement savings to meet her financial obligations. The fact that she had no alternative but to withdraw money from her IRA does not necessarily bring petitioner's situation within the purview of economic hardship or compelling public policy as envisioned by the provisions of the ETA rules and regulations.

### 2. The 10-Percent Additional Tax

Petitioner liquidated her IRA and received a $41,494 taxable distribution in 2001. Generally, a distribution from a qualified plan such as petitioner's IRA is includable in the distributee's gross income in the year of distribution. See secs. 61(a)(11), 72, 401(a), 402(a), 408(d), 4974(c)(1). Section 72(t)(1) imposes an additional tax on a distribution from a qualified retirement plan made prior to a taxpayer's attaining the age of 59½ unless an enumerated exception applies. The additional tax is intended to discourage premature distributions from retirement plans. Dwyer v. Commissioner, 106 T.C. 337, 340 (1996); see also S.

---

[8] Although not at issue here, we discuss petitioner's underlying liability to make clear the nature of petitioner's arguments. See supra p. 8.

Rept. 93-383, at 134 (1973), 1974-3 C.B. (Supp.) 80, 213. The additional tax equals 10 percent of the portion of such distribution that is includable in gross income.

It appears from the record that the taxable portion of petitioner's IRA distribution has already been reduced by the application of exceptions for medical, educational, and first-time home buyer expenses.[9] The remaining $21,694 does not appear to be subject to any exception, and petitioner does not contest her liability for the 10-percent additional tax on that amount. Rather, petitioner's argument is that if she had been properly represented by counsel throughout her divorce, her counsel would have known she had no source of funds other than her IRA with which she could satisfy the court order; her counsel would have suggested obtaining a qualified domestic relations order (QDRO), see sec. 72(t)(2)(C), to satisfy the obligation instead of permitting petitioner to be forced into a situation where liquidating her IRA was her only option. Accordingly, petitioner's argument continues, her taxes would have been far less under the other scenario, and fairness demands that she should not have to pay the full amount she admits she owes. However, the QDRO provision does not apply to distributions made

---

[9] The fact that the record indicates petitioner received an exception for a first-time homebuyer when she was not, in fact, a first-time homebuyer is beyond the scope of our review in the instant case.

from IRAs; the QDRO provision exempts from tax only distributions made from other types of qualified retirement plans. See sec. 72(t)(3)(A). Further, it is well settled that a "transaction must be given its effect in accord with what actually occurred and not in accord with what might have occurred." Frank Lyon Co. v. United States, 435 U.S. 561, 576 (1978). It was not an abuse of discretion for respondent to reject petitioner's OIC.

C. Interest Abatement

Regardless of respondent's position at trial, the record clearly supports our finding that petitioner requested an abatement of interest during the prior administrative proceedings and as part of her OIC. We therefore have jurisdiction to consider her request. See Landry v. Commissioner, 116 T.C. 60, 62 (2001); Katz v. Commissioner, 115 T.C. 329, 340-341 (2000).

Generally, interest on a Federal income tax liability begins to accrue from the last date prescribed for payment of that tax and continues to accrue, compounding daily, until payment is made. See secs. 6601(a), 6622. Interest abatements are permitted if a delay is attributable to unreasonable errors or delays by an official or employee of the Internal Revenue Service in performing a ministerial or managerial act. Sec. 6404(e)(1);[10] see also sec. 301.6404-2, Proced. & Admin. Regs.

---

[10] Prior to 1996, sec. 6404(e) provided for the abatement of interest attributable to "any error or delay by an * * *
(continued...)

Any abatement of interest applies only to the period of time attributable to the failure to perform the ministerial or managerial act.  See, e.g., <u>Pettyjohn v. Commissioner</u>, T.C. Memo. 2001-227; see also H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208.  Further, section 6404(e) requires that a taxpayer not only identify an error or delay caused by a ministerial or managerial act on the Commissioner's part, but also identify a specific period of time over which interest should be abated as a result of such error or delay.  See, e.g., <u>Spurgin v. Commissioner</u>, T.C. Memo. 2001-290.

We apply an abuse of discretion standard in reviewing the Commissioner's failure to abate interest.  See <u>Krugman v. Commissioner</u>, 112 T.C. 230, 239 (1999); <u>Woodral v. Commissioner</u>, 112 T.C. at 23.

Petitioner mailed her first offer in April 2002.  Respondent has no record of having received this letter.  She resubmitted the offer as an official OIC in September 2002.  Requests for

---

[10](...continued)
employee of the Internal Revenue Service * * * in performing a ministerial act".  Congress amended sec. 6404(e) to permit the abatement of interest for "unreasonable" error and delay in performing a ministerial or "managerial" act.  Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301(a), 110 Stat. 1457 (1996).  The amendment applies to interest accruing with respect to deficiencies or payments for taxable years beginning after July 30, 1996.  <u>Id.</u> sec. 301, 110 Stat. 1457.  Despite the change, the reasoning of cases decided under the old version of the statute is still generally applicable.

more information and responses went back and forth between the parties. According to petitioner's own timeline, discussions concerning petitioner's financial situation continued for a long time until the OIC was rejected in December 2003. After that, there was an administrative appeal process. There was a CDP hearing and a new OIC. The numbers were revised as the discussions continued. There was a Tax Court proceeding and the case was remanded to respondent's Office of Appeals for further consideration. A Supplemental Notice of Determination was issued in November 2007 and the case is now before us for consideration. Petitioner argues that the entire process took too long and with every delay, interest accrued. She claims it was an abuse of discretion by respondent not to abate the interest.

We acknowledge that the process from petitioner's first mailing of an offer to compromise her liability in April 2002 to our receipt of the case for final disposition was lengthy, yet there is no specific time period that we can identify that reveals respondent was responsible for an "unreasonable" error or delay.

There is also no specific period of time petitioner has identified where there is an error or delay attributable to a ministerial or managerial act on respondent's part. Rather, petitioner essentially requests that the interest with respect to her 2001 taxable year be abated either in whole or in part. As

we have previously held, such a request is, in effect, a request for an exemption from interest rather than a request for an abatement of interest; the scope of such a request is beyond that contemplated by the statute. See, e.g., Spurgin v. Commissioner, supra; Donovan v. Commissioner, T.C. Memo. 2000-220.

The biggest stretch of time between petitioner's submission of information and a reply from respondent was the period between October 21, 2002, and April 9, 2003. That 171-day period encompassed the Veterans' Day, Thanksgiving, Christmas, and New Year's holidays, among others. Petitioner has not demonstrated that 171 days is an unreasonably long time given respondent's workload and the time of year, particularly given respondent's need to review the voluminous documentation petitioner submitted and the number of revisions she made to respondent's own documents. Further, we have previously held that the mere passage of time does not, by itself, suggest an unreasonable delay or error caused by a ministerial or managerial act on the Commissioner's part such that an abatement of interest is warranted. See, e.g., Spurgin v. Commissioner, supra.

In Downing v. Commissioner, 118 T.C. 22 (2002), the taxpayers filed a return on which they correctly reported their $32,561 tax liability, yet they included only $5,000 and an OIC with the return instead of full payment. The IRS misplaced the taxpayers' OIC for a year, yet we held that the Commissioner's

refusal to abate the interest that accrued during that time was not an abuse of discretion. "If a taxpayer files a return but does not pay the taxes due, [section 6404(e) does] not permit abatement of [the] interest regardless of how long the IRS took to contact the taxpayer and request payment." Id. at 30-31 (citing H. Conf. Rept. 99-841 (Vol. II), at II-811 (1986), 1986-3 C.B. (vol.4) 1, 811).

Although we can identify mistakes on respondent's part, we are not convinced of unreasonable delay by respondent under the circumstances. Accordingly, we are not convinced that an interest abatement is warranted here, and therefore we hold that it was not an abuse of discretion by respondent to deny the abatement request.

Petitioner argues that having to pay interest is "unwarranted, unfair, and undeserved." But the purpose of interest is "to compensate the Government for delay in payment of a tax". Goettee v. Commissioner, T.C. Memo. 2003-43 (citing Avon Prods., Inc. v. United States, 588 F.2d 342, 343 (2d. Cir. 1978)), affd. 192 Fed. Appx. 212 (4th Cir. 2006). Interest is warranted because petitioner did not timely pay the tax due.

We also note that respondent advised petitioner repeatedly that she did not meet the criteria for an OIC on ETA grounds. To the extent petitioner persisted in challenging respondent's determination, the extra time spent was by her own choice.

D.  <u>Conclusion</u>

We have considered all of petitioner's arguments, and, to the extent we did not specifically address them, we find that they are without merit.

To reflect our disposition of the disputed issues,

<u>Decision will be entered</u>

<u>for respondent</u>.